UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| JOHN VINCENT and JOHN CHI, ) | |
| ) | |
| Plaintiffs, ) | Civil No. 5:18-cv-00419-GFVT |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| ) | **&** |
| ASHWINI ANAND, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the Plaintiffs' construed Motion for partial summary judgment. [R. 41.] This matter, in which the Plaintiffs allege that Dr. Anand violated various contractual agreements between the parties, was assigned to Judge Hood before being re-assigned to the undersigned. [R. 1; R. 48.] Judge Hood granted the Plaintiffs summary judgment on their breach claim but deferred ruling on the resulting damages. [R. 40.] The Plaintiffs then filed a "Motion to Modify the Scheduling Order," seeking additional briefing and discovery on damages. [R. 41.] Judge Hood construed it as a Motion for Partial Summary Judgment because it clearly explains the damages and addresses prior inconsistencies. [R. 42.] There is no genuine issue of material fact on the damages Dr. Anand owes to the Plaintiffs, so the construed Motion for partial summary judgment **[R. 41]** is **GRANTED**.

**I**

This action revolves around four contractual agreements. In a 2009 Stock Purchase Agreement, Cumberland-Pacer, LLC purchased Pacer Health Corporation's stock in Pacer Holdings of Kentucky, Inc. [R. 1-1.] One provision of that Agreement obligated Cumberland to

pay the Knox County Hospital's outstanding taxes, which PHKI was responsible for under a 2006 operating agreement between its subsidiary Pacer Health Management Corporation of Kentucky and the Knox County Hospital. *See id.* at 24. Dr. Anand is a member of Cumberland. [R. 1-2 at 2.] In addition to the Agreement, Dr. Anand executed a Guaranty in which he personally guaranteed payment of the taxes for which Cumberland was liable under the Agreement. [R. 1-2.]

Neither Cumberland nor Dr. Anand made any further payments on the delinquent taxes. [R. 1 at 5-6.] Consequently, PHC sued Cumberland, Dr. Anand, and Satyabrata Chatterjee in 2010 for breach of the Agreement and Guaranty. *Id.* at 3 (citing *Pacer Health Corp. v. Cumberland-Pacer, LLC, et al.*, 5:10-cv-00355). That action settled in 2012, memorialized in a Settlement Agreement. [R. 1-3.] Dr. Anand reaffirmed his Guaranty in that settlemen. *Id.* In 2013, the parties returned to this Court when Mr. Chi and Pacer again sued Dr. Anand and Ms. Chaterjee to enforce the 2012 Settlement. [R. 1 at 4 (citing *Pacer Health Corp., et al. v. Anand, et al.*, 5:13-cv-00014).] The parties settled that action by Agreement in 2013, in which Dr. Anand again reaffirmed his obligation to guarantee the tax payments. [R. 1-4.]

Now, the parties are before the Court for a third time. This action alleges that Dr. Anand breached the Guaranty, 2012 Settlement, and 2013 Settlement by not paying the delinquent taxes. [R. 1 at 5-6.] Judge Hood's summary judgment Order focused on Dr. Anand's breach of the Guaranty. He found that its "terms clearly state that the guarantor is obligated to pay the trust fund taxes owed." [R. 40 at 6.] Judge Hood rejected the three arguments Dr. Anand advanced in his defense, all of which argued that he had satisfied his obligations. *Id.* His blanket denials of the allegation that he did not pay the taxes were insufficient to refute the Account Statement showing that the taxes are unpaid. *Id.* at 7. Dr. Anand also submitted a

declaration that his "understanding and belief" is that all IRS settled all of its claims against the Pacer entities. *Id.* (citing [R. 34-4]). Judge Hood found that this allegation was unsupported and has no bearing on Dr. Anand's obligations as guarantor. *Id.* at 8. He ultimately concluded that Dr. Anand is bound to his agreement under the Guaranty but found that a genuine issue of material fact remains on the amount owed. *Id.* at 9. Judge Hood also found that the Plaintiffs are the prevailing party, entitling them to attorney's fees pursuant to a provision of the Guaranty, but deferred determining the specific amount. *Id.* at 11.

After Judge Hood entered his summary judgment Order, the Plaintiffs moved to amend the scheduling order to allow them to conduct discovery on damages. [R. 41.] In addition to seeking discovery, the Motion explained the Plaintiffs' calculation of the owed amount. *Id.* Judge Hood construed the Motion as a supplement to the Plaintiffs' summary judgment motion clarifying the outstanding tax liability. [R. 42.] He cited their representation that they "do not believe that an expert opinion is required to calculate the total liability," and their indication that the IRS transcripts accurately reflect what is owed. *Id.* at 2 (citing [R. 41 at 7]). Judge Hood found that the supplement "provides a clear explanation [of the outstanding damages] and addresses previous deficiencies." *Id.* Therefore, he found further discovery unnecessary and imposed a briefing schedule on damages.

## II

Under Rule 56, summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A fact's materiality is determined by the substantive

law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

The Plaintiffs seek $794,008.22. [R. 41 at 5.] They cite to the IRS transcripts, which establish account balances as of January 2020. *Id.* The transcript for the first quarter of 2009 shows a total balance of $325,545.28, reflecting a $280,762.16 account balance plus $44,783.12 in accrued interest. [R. 46-5.] The transcript for the second quarter of 2009 shows a total balance of $468,462.94, reflecting a $404,071.21 account balance plus $64,391.73 in accrued interest. [R. 46-6.] Accordingly, the trust fund taxes for the first and second quarters of 2009 have a collective balance, as of January 2020, of $794,008.22. *Id.* Dr. Anand presents three arguments challenging his liability for this amount and requests oral argument on the Motion. [R. 45.]

### A

First, Dr. Anand argues that the Guaranty obligates him to Pacer, not to the Plaintiffs. [R. 45 at 2-3.] The Guaranty states that the "Guarantor does hereby unconditionally and irrevocably guarantee to Pacer and its assignees the payment of the Guarantee obligations." [R. 34-1 at 3.] Because Dr. Anand guaranteed payment "to Pacer," he argues that the Plaintiffs "are seeking to

4

collect damages for breach of a contractual provision [to which] they are not a party." [R. 45 at 3.] In response, the Plaintiffs argue that they can enforce the Guaranty because they are signatories to it and are its intended beneficiaries. [R. 46 at 9-11.]

Only the parties to a contract may enforce it and recover damages for its breach. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) (citing 17A Am. Jur. 2d, *Contracts* § 425 (1991)). Dr. Anand suggests that the Plaintiffs cannot enforce the Guaranty because they are not "parties to the Guaranty itself." [R. 45 at 2.] This argument would be appropriate if the Guaranty were a discrete agreement to which the Plaintiffs were not parties. But it is not. The Guaranty is one provision of a broader Agreement to which the Plaintiffs *are* parties. [R. 46-1.] The Plaintiffs, Dr. Anand, and other parties all signed the Guaranty and Indemnification Agreement, which includes the Guaranty. *Id.* at 9. It also appears that the parties all initialed each page of the Agreement, including those which contain only the Guaranty. *Id.* at 2-4. Accordingly, the Plaintiffs are parties to an Agreement with the Defendant, one provision of which is his commitment to guarantee Pacer's tax obligation. *Id.* The Plaintiffs can enforce that provision as parties to the broader Agreement.

Even if the Plaintiffs' signing the Agreement was insufficient to give them standing to enforce the Guaranty, they could enforce it as third-party beneficiaries. A third person who is not party to a contract may nevertheless have standing to sue under it if the parties intended them to benefit from it. *Presnell*, 134 S.W.3d at 579. The Agreement specifically states that it was "for the benefit of" the Plaintiffs. [R. 46-1 at 1.] Later, it states that the "Guaranty . . . shall inure to the benefit of the Pacer Entities." *Id.* at 7. The Plaintiffs are both part of the Pacer Entities. *Id.* at 1. The Agreement itself makes clear that the parties intended the Plaintiffs "to

5

benefit from the contract." *Presnell*, 134 S.W.3d at 579. Dr. Anand is liable to the Plaintiffs under either theory.

**B**

Second, Dr. Anand argues that the Plaintiffs did not establish the owed taxes to a reasonable certainty. *Id.* at 4-5. He claims that the provided transcripts are only addressed to Mr. Vincent, not Mr. Chi, the degree of IRS collection activity is unclear, and there is no evidence on whether the other Pacer entities have satisfied any tax liability. *Id.*

The underlying Stock Purchase Agreement required Cumberland to pay Pacer's outstanding taxes as of October 28, 2009. [R. 1-1 at 24.] It specifically required Cumberland to pay $25,000 per month to outstanding withholding taxes, designated as applying to the "trust fund tax liability (i.e. first quarter 2009, second quarter 2009, etc.)." *Id.* The Guaranty promised that Dr. Anand would guarantee Cumberland's obligation to "pay the trust fund portion of the delinquent federal and state withholding taxes owed by Pacer Health as of October 28, 2009."

The IRS transcripts establish that $794,008.22 remains due on the trust fund tax liability, including interest. [R. 46-5; R. 46-6.] 26 U.S.C. §§ 6671(b) and 6672 allow officers of a corporation who are under a duty to pay the corporation's outstanding taxes to be assessed a penalty for the unpaid tax. Mr. Vincent stated in a sworn declaration that the transcript is of his personal account because the IRS deemed him a "responsible person" for Pacer's trust fund tax liability when Pacer defaulted. [R. 31-2 at 4.] The transcripts support this representation because they reflect "Trust Fund Recovery Penalt[ies]" and cite § 6672 of the Internal Revenue Code. [R. 46-5; R. 46-6.] The same penalties appear on Mr. Chi's IRS account because he was also designated a responsible person. [R. 31-3 at 4.] Accordingly, the transcripts are sufficient

6

to establish that $794,008.22 is due on the trust fund tax liability, inclusive of interest, as of January 2, 2020. [R. 46-5; R. 46-6.]

Mr. Vincent offers no evidence to the contrary and cannot create a genuine issue on the amount owed. It is inapposite that the IRS garnered wages from Mr. Chi and may have garnered wages from Mr. Vincent. [R. 45 at 4.] Dr. Anand guaranteed payment of the trust fund taxes owed by Pacer as of October 28, 2009. [R. 1-1 at 24; R. 46-1 at 1.] If the IRS later garnished either of the Plaintiffs' wages to recover the outstanding taxes, he would still be liable for the same amount. Dr. Anand's liability to the Plaintiffs in part reimburses them for any of their wages which were garnished to satisfy an obligation which Dr. Anand had guaranteed.

Dr. Anand also suggests that other Pacer Entities may have satisfied the liability. [R. 45 at 4.] This suggestion is a "mere allegation" which does not create a genuine issue. *Liberty Lobby*, 477 U.S. at 256. The possibility that the outstanding taxes are less than the IRS transcripts represent is owed as of January 1, 2020 is insufficient to deny the Plaintiffs summary judgment. Ultimately, Dr. Anand provided no "specific facts showing that there is a genuine issue for trial." *Id.* He is liable for the $794,008.22 reflected on the IRS transcripts.

### C

Finally, Dr. Anand claims that the Guaranty limits his liability to $500,000. [R. 45 at 6.] In the Guaranty, Dr. Anand guaranteed "the payment and performance of Cumberland's obligation to pay the trust fund portion of delinquent federal and state withholding taxes owed by Pacer Health as of October 28, 2009 not to exceed $500,000." [R. 1-2 at 2.] He relies on that limitation to argue that he cannot be liable to the Plaintiffs in excess of $500,000. [R.4 5 at 6.] In contrast, the Plaintiffs assert that Dr. Anand's maximum aggregate liability is $1,250,000. [R. 46 at 5.] They point to a separate provision of the Guaranty which states that "[the] amount of

7

the maximum aggregate liability of the Guarantor hereunder shall be the principal amount of the $1,250,000." [R. 1-2 at 4.] They explain that the $500,000 limitation refers only to the trust fund taxes, not other liabilities such as interest. [R. 46 at 6.] They argue that the Guaranty's maximum aggregate liability provision would be superfluous if Dr. Anand's maximum liability was $500,000. *Id.* at 7.

Crucially, the parties later amended Dr. Anand's Guaranty obligation. [R. 46 at 7-8.] In the 2012 Settlement Agreement, Dr. Anand reaffirmed his "obligation under the Guaranty, as amended hereby, to pay the Trust Fund Taxes up to and including the maximum liability set forth in the Guaranty ($1,250,000.00) for such taxes." [R. 1-3 at 6.] Dr. Anand did not address this Agreement in his Response. [R. 45.]

The 2012 Settlement either clarifies or amends the Guaranty to state that Dr. Anand is liable up to $1,250,000 *for* the trust fund taxes. He "reaffirmed" his obligation to pay the trust fund taxes. [R. 1-3 at 6.] That obligation is "up to and including the maximum liability." *Id.* Finally, the maximum liability is "for such taxes." *Id.* The language of the Settlement clearly makes Dr. Anand liable up to the maximum aggregate liability for the trust fund taxes. Accordingly, under the 2012 Settlement, Dr. Anand's liability for the taxes is extended to $1,250,000.

### III

The Plaintiffs submitted adequate proof to establish that Dr. Anand owes them $794,008.22 under the Guaranty and settlements. Dr. Anand fails to create a genuine issue of material fact on the amount owed, so summary judgment on damages is appropriate. There is also no need to conduct oral arguments, so Dr. Anand's request for a hearing is denied. Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

8

1. The Plaintiffs' construed Motion for Summary Judgment **[R. 41]** is **GRANTED**; and,

2. An appropriate Judgment will be entered contemporaneously.

This the 22nd day of March, 2023.

Gregory F. Van Tatenhove
United States District Judge

9